IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC; CYTEC INDUSTRIES INC.; GOODRICH CORP.; HUNTSMAN PETROCHEMICAL LLC; JEFFERSON COUNTY DRAINAGE DISTRICT NO. 7; KMG BERNUTH, INC.; MICHELIN NORTH AMERICA, INC.; TEXACO INC.<br><br>     Plaintiffs,<br>v.<br><br>ATLANTIC RICHFIELD COMPANY; BP AMERICA INC.; BP EXPLORATION (ALASKA) INC.; TOTAL PETROCHEMICALS & REFINING USA, INC.<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No.  1:19-cv-312<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

For their Complaint, Plaintiffs Bridgestone Americas Tire Operations, LLC, Cytec Industries, Inc., Goodrich Corp., Huntsman Petrochemical LLC, Jefferson County Drainage District No. 7, KMG Bernuth, Inc., Michelin North America, and Texaco Inc. ("Plaintiffs"), by and through counsel, allege as follows:

### STATEMENT OF THE CASE

1. This is a civil action pursuant to the provisions of Section 113(f) of the Comprehensive Environmental Response Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 9601 *et seq.* ("CERCLA"), for contribution against each Defendant for its equitable shares of certain past response costs and damages incurred and to be incurred by Plaintiffs, relating to the work to remediate the Star Lake Canal Superfund Site in Jefferson County, Texas.

2. Plaintiffs seek contribution from Defendant Atlantic Richfield Company, Defendant BP America Inc. ("Defendant BP America"), Defendant BP Exploration (Alaska) Inc.

("Defendant BP Exploration"), and Defendant Total Petrochemicals & Refining USA, Inc. ("Defendant Total") (together "Defendants") pursuant to Section 113(f) of CERCLA, 42 U.S.C.A. § 9613(f), for contribution to the response costs Plaintiffs have incurred and may incur in the future at the Star Lake Canal Superfund Site pursuant to the September 26, 2016 Settlement Agreement and Administrative Order on Consent for Remedial Design ("SAAOC") entered by the Plaintiffs and the United States Environmental Protection Agency ("EPA), along with a declaration as to each Defendant's liability and an equitable allocation of past response costs incurred pursuant to the SAAOC and future response costs.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), providing jurisdiction over controversies arising under CERLCA and pursuant to 28 U.S.C.A. § 1331, providing for jurisdiction over civil actions arising under the laws of the United States and pursuant to 28 U.S.C.A. §§ 2201 and 2202 providing for the issuance of declaratory judgments.

4. Venue is appropriate in the Eastern District of Texas pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b) and 28 U.S.C. §§ 1391(b) and (c), because the release or threatened release of hazardous substances occurred at or from the Star Lake Canal Superfund Site located in this judicial district.

## THE PARTIES

5. Plaintiffs are each cooperating with one another and the EPA and have entered into a SAAOC concerning the Star Lake Canal Superfund Site. Plaintiffs bring this action against the Defendants for contribution to the costs incurred pursuant to the SAAOC and to be incurred in connection with the Site's remediation.

6. Plaintiff Bridgestone Americas Tire Operations, LLC ("Bridgestone") is a limited

liability company organized and existing under the laws of the State of Delaware.  Plaintiff Bridgestone's principal place of business is in Nashville, Tennessee.

7. Plaintiff Cytec Industries, Inc. ("Cytec") is a corporation organized and existing under the laws of the State of Delaware.  Plaintiff Cytec's principal place of business is located in Princeton, New Jersey.

8. Plaintiff Goodrich Corp. is a corporation organized and existing under the laws of the State of New York Plaintiff Goodrich Corp.'s principal place of business is located in Charlotte, North Carolina.

9. Plaintiff Huntsman Petrochemical LLC ("Huntsman") is a corporation organized and existing under the laws of the State of Delaware.  Plaintiff Huntsman's principal place of business is located in The Woodlands, Texas.

10. Plaintiff Jefferson County Drainage District No. 7 is a drainage district created under the laws of Texas.  It is located in Port Arthur, Texas.

11. Plaintiff KMG Bernuth, Inc. ("KMG") is a corporation organized and existing under the laws of the State of Delaware.  Plaintiff KMG's principal place of business is located in Fort Worth, Texas.

12. Plaintiff Michelin North America ("Michelin") is a corporation organized and existing under the laws of the State of New York.  Plaintiff Michelin's principal place of business is located in Greenville, South Carolina.

13. Plaintiff Texaco Inc. ("Texaco") is a corporation organized and existing under the laws of the State of Delaware.  Plaintiff Texaco's principal place of business is located in San Ramon, California.

14. Defendant Atlantic Richfield Company ("Atlantic") is a corporation organized

and existing under the laws of the State of Delaware. Defendant Atlantic Richfield Company's principal place of business is located in Los Angeles, California.

15. Defendant BP America Inc. ("BP America") is a corporation organized and existing under the laws of the State of Delaware. Defendant BP America's principal place of business is located at Warrenville, Illinois.

16. Defendant BP Exploration (Alaska) Inc. ("BP Exploration") is a corporation organized an existing under the laws of the State of Delaware. Defendant BP Exploration's principal place of business is located at Anchorage, Alaska.

17. Defendant Total Petrochemicals & Refining USA, Inc. ("Total") is a corporation organized and existing under the laws of the State of Delaware. Defendant Total's principal place of business is located in Houston, Texas.

## THE STAR LAKE CANAL SUPERFUND SITE

18. The Star Lake Canal Superfund Site ("Site") is located in Jefferson County, Texas. The Site consists of two industrial canals, the Star Lake Canal and the Jefferson Canal, and five additional areas of interest (AOIs), which are Jefferson Canal Spoil Pile, Former Star Lake, Gulf States Utility Canal, Molasses Bayou Waterway, and the Molasses Bayou Wetland.

19. The primary habitat at the Site consists of open water canals and bayous bordered by emergent wetlands. These wetlands are habitats used by threatened species.

20. Industrial operations have occurred in the area at/or surrounding the Site since the early 1900s and continue to the present day.

21. The EPA and Texas environmental authorities have determined that over time, waste disposal operations at/or near the Site have contaminated soil, sediments and groundwater with hazardous substances and other chemical substances.

22. Environmental investigations conducted by Texas environmental authorities

during the 1970s and 1980s documented the presence, in soil samples at the Site, of many hazardous substances, including acenaphthene, acenaphthylene, anthracene, benzo(a)anthracene, benzo(b)fluoranthene, benzo(p)pyrene, biphenyls, chrysene, fluoranthene, flourene, naphthalene, pentachlorophenol phenanthrene, pyrene, toxaphene, and others.

## EPA ACTION

23. The Texas Natural Resource Conservation Commission ("TNRCC") (now known as the Texas Commission on Environmental Quality ("TCEQ")), on behalf of the EPA, conducted a Screening Site Inspection ("SSI") of the Star Lake Canal, during the pre-remedial stage of the Superfund process, and issued its SSI Report on or about September 1997. The SSI Report identified the presence of hazardous substances in the soil and sediment of the Site, including acenaphthene, anthracene, aroclor-1254 (a polychlorinated biphenyl [PCB]), arsenic, barium, benzo(b)fluoranthene, benzo(k)fluoranthene, cyanide, fluoranthene, fluorene, mercury, 2-methylnaphthalene, naphthalene, phenanthrene, pyrene, thallium, and others.

24. The TNRCC then, on behalf of the EPA, performed an Expanded Site Inspection ("ESI") of the Site in March of 1998, collecting and analyzing additional sediment samples from the Site. The ESI Report, dated January 1999, identified additional hazardous substances, including acetone, aldrin, benzene, benzo(g,h,i)pyrene, chromium, copper, 4,4'-DDD, endosulfan I, ethylbenzene, heptachlor epoxide, indeno(1,2,3-cd)pyrelene, silver, styrene, toluene and total xylenes. Polycyclic aromatic hydrocarbons (PAHs) have also been documented at the Site.

25. On July 22, 1999, the EPA proposed the addition of the Site to the National Priority List ("NPL"). On August 20, 2000, and pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, the Site was added to the NPL (40 C.F.R. Part 300, App. B), due to the presence of the contaminants listed above.

26. In its final Record of Decision ("ROD") of September 30, 2013, the EPA provided its decision on the response actions to be instituted at the Site. The ROD set forth the EPA's Selected Remedy, in accordance with CERCLA and the National Oil and Hazardous Substances Pollution Contingency Plan.

27. The ROD stated that a CERCLA response action was to be conducted at the Site to address hazardous substances that were deposited into sediment through the historic and permit-exceedance discharges of wastewater and storm water runoff to the Site. ROD, § 11.0.

28. The ROD stated that the basis for the EPA's action at the Site was its finding that the hazardous substances there created a medium or a high probability of ecological toxicity to fauna and an unacceptable risk for some ecological receptors. ROD, § 15.0.

29. The ROD set forth the EPA's overall Selected Remedy for the Site and the particular response actions the EPA selected for each AOI within the Site. The particular response actions included excavation and disposal of soil and/or sediment, containment with soil, clay and/or armor caps, erosion measures and monitored natural recovery.

30. The EPA estimated the cost of its Selected Remedy for the Site as $21,855,000. ROD, § 17.2.8.

31. The EPA is the lead governmental agency for the Site's remedy selection and cleanup activities. The Texas Commission on Environmental Quality acts as the support agency.

32. On September 26, 2016, Plaintiffs and the EPA entered into the SAAOC, U.S. EPA Region VI CERCLA Docket No. 06-14-16, under the authority of Sections 104, 106, 107 and 122 of CERCLA, 42 U.S.C. §§ 9604, 9606, 9607, and 9622, to complete a Remedial Design ("RD") for implementation of the remedy the EPA selected in its September 2013 ROD. SAAOC, ¶ 2.

33. Pursuant to the SAAOC, Plaintiffs have agreed to finance and perform the work as specified within the SAAOC. Plaintiffs have also agreed, pursuant to the SAAOC, to reimburse the United States for the response costs specified in the SAAOC.

34. The SAAOC provided that Plaintiffs "shall undertake a Remedial Design ('RD'), including various procedures and technical analyses, to produce a detailed set of plans and specifications for implementation of the Remedial Action selected in EPA's September 2013 Record of Decision for the Star Lake Canal Superfund Site…In addition, as provided herein, [Plaintiffs] shall reimburse the United States for certain future response costs…" SAAOC, ¶ 1. In the SAAOC, "Respondents" included each of Plaintiffs in this action and the United States General Services Administration, which in the SAAOC is sometimes referred to as the "Settling Federal Agency."

35. The SAAOC provided that, "[t]he objectives of the EPA, the Settling Federal Agency [the U.S. General Services Administration was also a Respondent], and Respondents [Plaintiffs] entering into the SAAOC are to protect public health or welfare of the environment at the Site by the design of response actions at the Site by Respondents, to reimburse response costs of EPA, and to resolve the claims and potential counterclaims among EPA, Respondents, and the Settling Federal Agency as provided in this SAAOC." SAAOC, ¶ 4.

36. The SAAOC "is binding upon the EPA… and upon Respondents and their successors and assigns…" SAAOC, ¶ 7.

37. The SAAOC provides: "Respondents are jointly and severally liable for carrying out all activities required of Respondents by this SAAOC…" SAAOC, ¶ 8.

38. The SAAOC provides: "Respondents shall perform all action necessary to implement the Statement of Work" at the Site. SAAOC, ¶ 37.

7

39. The SAAOC provides: "Respondents shall pay EPA all Future Response Costs not inconsistent with the NCP." SAAOC, ¶ 72.

40. The SAAOC provides: "The Parties agree that this SAAOC constitutes an administrative settlement for purposes of Sections 113(f)(2) and 122(h)(4) of CERCLA, 42 U.S.C. §§ 9613(f)(2) and 9622(h)(4)…The Parties further agree that this Settlement Agreement constitutes an administrative settlement pursuant to which each Respondent has, as of the Effective Date, resolved its liability to the United States within the meaning of Section 113(f)(3)(b), of CERCLA, 42 U.S.C. § 9613(f)(3)(b) for the matters addressed in this Settlement Agreement." SAAOC, ¶¶ 108, 109.

41. Plaintiffs have engaged in response and removal work under the SAAOC and have incurred response costs at the Site.

42. Plaintiffs have engaged in the above activities at the Site and have incurred response costs and will continue to incur such costs pursuant to the SAAOC, including reimbursement of EPA response costs.

43. In addition, Plaintiffs have incurred other response costs, including consultant and attorney's fees and expenses to search for other potentially responsible parties associated with the Site, and other consultant and attorney's fees and expenses that are linked to the remedial design at the Site, which Plaintiffs are entitled to recover against the Defendants under CERCLA.

44. Plaintiffs will continue to incur response costs and any other incurred costs required by the EPA, including reimbursement of the EPA's response costs.

## DEFENDANTS' RESPONSIBILITY FOR CONTAMINATION AND THEIR FAILURE TO CONTRIBUTE TO THE RESPONSE COSTS INCURRED PER THE SAAOC

45. Defendant Total owns and operates an oil refinery ("Refinery") which is adjacent to the Site.

46. The Refinery produces transportation fuels and other petroleum-based products sold globally. It originates from 1936, when the Atlantic Refining Company began a refining operation whose size and capacity has, since then, expanded significantly.

47. The Atlantic Refining Company owned and operated the Refinery from on or about 1936 until on or about 1966, when it merged with Richfield Oil Corporation to form Defendant Atlantic Richfield Company.

48. Defendant Atlantic Richfield Company is the successor in interest to Atlantic Refinery Company and is accordingly responsible for Atlantic Refinery Company's ownership and operation of the Refinery from approximately 1936 through 1966.

49. Defendant Atlantic Richfield Company owned and operated the Refinery from 1966 through 1968, when it sold the Refinery to BP Oil Corporation on or about December 18, 1968.

50. BP Oil Corporation owned and operated the Refinery from 1968 through 1973, when it sold the Refinery to American Petrofina.

51. Defendant BP Exploration (Alaska) Inc. is the successor in interest to, and successor corporation of, BP Oil Corporation and is therefore responsible for BP Oil Corporation's ownership and operation of the Refinery from approximately 1968 through 1973.

52. In late 1973, BP Oil Corporation merged into Sohio Petroleum Company, a Delaware corporation. On December 19, 1977, Sohio Petroleum Company changed its name to Sohio Natural Resources Company. On December 31, 1977, Sohio Natural Resources Company

changed its name to Sohio Alaska Petroleum Company. On February 25, 1986, Sohio Alaska Petroleum Company changed its name to Standard Alaska Production Company. In 1989, Standard Alaska Production Company changed its name to BP Exploration (Alaska), Inc.

53. In 1970, Standard Oil Company of Ohio acquired BP Oil Corporation, and from that year until 1973, directed operations of the Refinery such that it is also responsible for the Refinery's operations during those years. Defendant BP America, Inc. is the successor in interest to, and successor corporation of, Standard Oil Company of Ohio and is therefore responsible for the Refinery's operation from at least 1970 through 1973.

54. In 1973, American Petrofina, Inc. acquired the Refinery from BP Oil Corporation. Thereafter, American Petrofina, Inc. and its successor corporations owned and operated the Refinery to the present time.

55. In 1991, American Petrofina, Inc. changed its name to FINA, Inc. In 1998, FINA, Inc. merged into Petrofina S.A. In 1999, Petrofina S.A. merged with Total, S.A. to form TotalFina. In 2000, TotalFina changed its name to ATOFINA Petrochemicals, Inc. In 2004, ATOFINA Petrochemicals, Inc. changed its name to Total Petrochemicals USA, Inc. In 2012, Total Petrochemicals USA, Inc. changed its name to Total Petrochemicals & Refining USA, Inc.

56. Defendant Total is the current owner and operator of the Refinery, and as the successor corporation to each company that owned and operated the Refinery from sometime in 1973 to the present, is responsible for the ownership and operation of the Refinery in those years.

57. Hazardous substances disposed at/or from the Refinery were released into the Molasses Bayou Wetland and the Molasses Bayou Waterway, which are two of the seven areas of interest (AOI) comprising the Site, during the time in which each Defendant owned and operated the Refinery, and/or during periods of the Refinery's operation for which they are

responsible.

58.  Effluent (process and storm water) containing hazardous substances is documented to have been discharged from the Refinery at multiple outfall locations.

59.  Each Defendant discharged contaminated wastes to the Molasses Bayou throughout the 80-plus year operating timeframe of the Refinery.

60.  Waterways in the Molasses Bayou near the Refinery served as a transport pathway to the Site over time for a portion of the wastes discharged from multiple point sources at the Refinery. This pathway existed both prior to and after the construction of a hurricane protection levee around the Refinery, in the 1970s.

61.  Molasses Bayou and the surrounding wetlands area are influenced by bi-directional tidal action.

62.  The bi-directional tidal action of Molasses Bayou and the surrounding wetlands allowed wastes containing hazardous substances discharged by Defendants, from the Refinery, to be transported to the Site.

63.  Chemical analyses establish that the Refinery, is the source of certain contaminants at the Site disposed of by Defendants during their ownership and operation of the Refinery.

64.  During periods in which each Defendant owned and operated the Refinery, wastewater discharges, waste disposals and stormwater discharges from the Refinery contained CERCLA-listed hazardous substances which contributed to the contamination of the Site, and of the Molasses Bayou Waterway and Molasses Bayou Wetlands AOIs in particular. Some of these hazardous substances include polycyclic aromatic hydrocarbons, semi-volatile organic

compounds, volatile organic compounds, PCBs (polychlorinated biphenyl), metals and pesticides.

65. Each Defendant has liability for response and cleanup costs Plaintiffs incurred pursuant to the SAAOC as stated above at the Site.

66. On November 1, 2017, EPA notified Defendant BP America of its potential liability for the Site. That notification detailed the nexus between the stormwater and wastewater discharged and disposed of from the Refinery, during periods in which Defendant BP America was responsible for that refinery, and the contamination found in the Site, including the pathway the hazardous materials originating from the Refinery travelled to pollute the Site.

67. On November 1, 2017, EPA notified Defendant Total of its potential liability for the Site. That notification detailed the nexus between the stormwater and wastewater discharged and disposed of from the Refinery, during periods in which Defendant Total was responsible for that refinery, and the contamination found in the Site, including the pathway the hazardous materials originating from the Refinery travelled to pollute the Site.

68. In its letter of December 18, 2018, the EPA confirmed to Defendant Total its earlier determination that Defendant Total may be potentially liable for the Star Lake Canal Superfund Site as a potentially responsible party.

69. In its letter of December 18, 2018, the EPA confirmed to Defendant BP America its earlier determination that Defendant BP America may be potentially liable for the Star Lake Canal Superfund Site as a potentially responsible party.

70. On multiple occasions prior to and after EPA notified Defendants BP America and Total that they may be potentially responsible parties, Plaintiffs have requested Defendants BP America and Total to cooperate with them and the EPA to fund their proportionate share of

the response costs incurred and to be incurred pursuant to the SAAOC at the Site.

71. To date, Defendants BP America and Total have not cooperated with either EPA or Plaintiffs in addressing contamination at the Site and have not contributed to or shared in any of the RD activities that are required pursuant to the SAAOC.

72. Due to the non-cooperation of Defendants BP America and Total, and their failure to participate in or contribute to their fair share to clean up the Site, Plaintiffs have incurred, and in the future will incur, more than their proportionate share of response costs.

**COUNT I.   CONTRIBUTION UNDER CERCLA**

73. Plaintiffs reallege and incorporate by referenced Paragraph Nos. 1 through 72 of this Complaint as if fully restated herein.

74. Section 107(a)(4) of CERCLA, 42 U.S.C.A. § 9607(a)(4) provides, in relevant part, that:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section –
>
> (1) the owner and operator of a vessel or facility, (2) any person who at the time of disposal of any hazardous substance owned or operated in any facility at which such hazardous substances were disposed of, … from which there is a release, or a threatened release which causes the incurrence of response costs, shall be liable for – (A) all costs of removal or remedial action incurred by the United States Government or a State  … not inconsistent with the national contingency plan; (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;…

75. "Disposal" is defined in CERCLA Section 101(29) by reference to the Solid Waste Disposal Act ("SWDA"). 42 U.S.C. § 9601(29). The SWDA defines "disposal" as "the discharge, deposit, injection, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. § 6903(3).

13

76. "Facility" is defined in CERCLA Section 101(9) as "any building, structure, installation, equipment, pipe or pipeline" or "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed…" 42 U.S.C. § 9601(9)

77. "Hazardous substance" is defined in CERCLA Section 101(14) by reference to other federal statutes and by reference to a list of substances published by EPA at 40 C.F.R. § 302.4.  42 U.S.C. § 9601(14).

78. "Owner" or "Operator" is defined in CERCLA Section 101(20) as "…in the case of an onshore facility or an offshore facility, any person owning or operating such facility…"  42 U.S.C. § 9601(20).

79. "Person" is defined in CERCLA Section 101(21) as "an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body."  42 U.S.C. § 9601(21).

80. "Release" is defined in CERCLA Section 101(22) as "any spilling leaking pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant) …." 42 U.S.C. § 9601(22).

81. "Response" is defined in CERCLA Section 101(25), and includes "remove, removal, remedy, and remedial action" and includes "enforcement activities" relating to those terms. 42 U.S.C. § 9601(25).

82. The Site and the Refinery is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9), as it is a "site or area where a hazardous substance has been

deposited, stored, disposed of, or placed, or otherwise come to be located."

83. There has been a "release" and/or a "threatened release" of "hazardous substances" at the Site and Refinery which has caused the incurrence of "response costs" by Plaintiffs pursuant to the SAAOC, and which will cause them future "response costs," within the meanings of Sections 101(22), 101(14) and 107 of CERCLA, 42 U.S.C. §§ 9601(22), 9601(14), 9601(25) and 9607.

84. Each of the Defendants is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

85. Pursuant to CERCLA, 42 U.S.C. §§ 9607(a)(3) and or 9607(a)(4), each Defendant is liable as a generator of materials containing hazardous substances, which materials were disposed at the Site and Refinery and/or a transporter of hazardous substances who selected those locations for the disposal of such hazardous substances, and who did dispose of such hazardous substances at those locations.

86. The Defendants' actions caused or contributed to the release and/or threat of release of hazardous substances at the Site which caused Plaintiffs to incur response costs.

87. Pursuant to CERCLA, § 9607(a)(1) and (2), Defendants Atlantic Richfield Company, BP America, and BP Exploration are liable as prior owners and operators of a facility at a time when hazardous substances were disposed of at and from that facility, which contaminated the Site.

88. Pursuant to CERCLA, § 9607(a)(1) and (2), Defendant Total is liable as a current owner and operator and is the successor in interest to prior owners or operators of a facility at a time when hazardous substances were disposed of at and from that facility, which contaminated the Site.

89. As a result of the release and threatened release of hazardous substances at or from the Refinery and Site, Plaintiffs have incurred response costs pursuant to the SAAOC and will continue to incur costs of "response," as that term is defined by CERCLA.

90. The response actions taken, and costs incurred pursuant to the SAAOC, and which will be incurred in the future, by Plaintiffs are consistent with the National Contingency Plan, as the ROD states. ROD, § 2.0

91. Pursuant to CERCLA, 42 U.S.C. § 9613, each Defendant is liable in contribution for the response costs incurred pursuant to the SAAOC and to be incurred by Plaintiffs in response to the release or threatened release of hazardous substances at and from the Site and Refinery they owned and operated.

92. Sections 113(f)(1) and (3)(B) of CERCLA, 42 U.S.C. § 9613(f)(1) and (3)(B), provide, in relevant part, that:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a)…
>
> A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not part to a settlement.

93. The SAAOC constitutes an administrative settlement pursuant to which each Plaintiff has resolved its liability to the United States within the meaning of Section 113(f)(1), of CERLA, 42 U.S.C. § 9613(f)(3)(b) for the matters addressed in the SAAOC, which include the response costs incurred for remedial design at the Site pursuant to the SAAOC and the future response costs connected with the requirements of the SAAOC. ROD, § 108.

94. The Defendants are liable and or potentially liable parties under CERCLA, which have not resolved their liability to Plaintiffs or the EPA, and they are not parties to the SAAOC or any other settlement agreement with the EPA.

16

95. To date, Plaintiffs have been compelled to incur and/or otherwise pay more than their equitable share of response costs pursuant to the SAAOC and will be required to incur and/or otherwise pay more than their equitable share of any response costs.

96. The Plaintiffs are entitled to contribution from each Defendant under Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), for Defendants' respective equitable shares of all costs incurred by the Plaintiffs, including all future costs associated with the Site, in addition to applicable interest as provided for in Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against each Defendant finding that each is liable under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and Section 28 U.S.C. §§ 2201 and 2202; determining the amount of each Defendant's equitable share of the response costs incurred pursuant to the SAAOC; and finding that each Defendant is obligated to pay its equitable share of each of the Plaintiff's past response costs incurred pursuant to the SAAOC and continuing response costs associated with the Site to the date of judgment, plus interest and costs of suit, including reasonable attorney's fees and consultant fees as permitted by law, and grant any such other relief as the Court may deem just and appropriate under the circumstances.

**COUNT II – DECLARATORY RELIEF UNDER CERCLA**

97. Plaintiffs reallege and incorporate by referenced Paragraph Nos. 1 through 96 of this Complaint as if fully restated herein.

98. There is a present and actual controversy between Plaintiffs and all Defendants concerning their respective rights and obligations with respect to the response and cleanup costs pursuant to the SAAOC associated with the Site.

99. Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), provides, in relevant part, that:

> In any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages. A subsequent action or actions under section 9607 of this title for further response costs at the vessel or facility may be maintained at any time during the response action, but must be commenced no later than 3 years after the date of completion of all response action. Except as otherwise provided in this paragraph, an action may be commenced under section 9607 of this title for recovery of costs at any time after such costs have been incurred.

100. Plaintiffs seek a declaratory judgment under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), against each Defendant holding each liable for its respective equitable shares of response costs or damages, if applicable, incurred pursuant to the SAAOC, with the declaratory judgment binding in any subsequent action to recover further response costs and damages, if applicable.

101. Plaintiffs are entitled to judgment against each Defendant for past response costs incurred pursuant to the SAAOC and future response costs and damages, if applicable, incurred in connection with the Site.

WHEREFORE, Plaintiffs respectfully pray that this Court enter a declaratory judgment against each Defendant that is binding upon each of them finding that each Defendant is liable under CERCLA; determining the amount of each Defendant's equitable percentage share of response costs incurred by each of the Plaintiffs pursuant to the SAAOC; and finding that each Defendant is obligated to pay for its equitable percentage share of all future response costs and damages, if applicable, that may be incurred by each Plaintiff after the date of judgment associated with the Site.  Plaintiffs further request that this Court award interest and costs of suit, including reasonable attorney's fees and consultant fees as permitted by law, and order any such relief as the Court may deem just and appropriate under the circumstances.

Dated this 22th day of July, 2019.

Respectfully submitted,

**DOERNER, SAUNDERS, DANIEL & ANDERSON, L.L.P.**

By: s/ *Michael S. Linscott*
Michael S. Linscott, Texas Bar No. 12392663
Two West Second Street, Suite 700
Tulsa, Oklahoma 74103-3117
Telephone: 918.582.1211
Facsimile: 918.591.5360
mlinscott@dsda.com

Attorneys for Plaintiffs

**Bridgestone Americas Tire Operations, LLC**
**Cytec Industries, Inc.**
**Goodrich Corp.**
**Huntsman Petrochemical LLC**
**Jefferson County Drainage District No. 7**
**KMG Bernuth, Inc.**
**Michelin North America**
**Texaco Inc.**